UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES CARNEGLIA,

     Plaintiff,

vs.

UNITED STATES OF AMERICA,

     Defendant.

Case No. _13-CV-1586_

**COMPLAINT**

CIVIL ACTION PURSUANT TO
FEDERAL TORT CLAIMS ACT

FILED
SCRANTON
JUN 13 2013
PER _____
DEPUTY CLERK

## VERIFIED COMPLAINT FOR DAMAGES

### I. Introduction

1.   This is a civil action on a tort claim pursuant to the Federal Tort Claims Act ("FTCA") U.S.C. §1346(b) filed by Plaintiff CHARLES CARNEGLIA, a Federal Prisoner, alleging personal injury caused by negligent or wrongful act or omission of any  employee of the Government while acting within the scope of his office or employment.

2.   Plaintiff seeks damages in the amount of $20,000.

### II. Jurisdiction

3.   Jurisdiction of this court is invoked pursuant to U.S.C. §1346(b) in that this is a civil action bringing claim "against the United States, for money damages, accuring on and after January 1, 1945, for personal injury  caused by the negligent or wrongful act or omission of any employee of the Government while

- 1 -

acting within the scope of his office or employment."

    4.   Jurisdiction of this court is invoked pursuant to U.S.C. §1402(b) in that this civil action on this tort claim against the United States is brought forward in the District Court for the Middle District of Pennsylvania, the Judicial district where the Plaintiff resides and where the act or ommissions complained of occured.

    5.   Pursuant to §2401(b) the Plaintiff filed an administrative tort claim on May 16, 2013 and as of the filing date on this claim has recieved no response.  Due to the two year date of the occurence of injury, Plaintiff has filed a motion to hold this claim in abayence until administrative tort has been resolved or has gone unresolved for the required time.

### III. Parties

    6.   Plaintiff CHARLES CARNEGLIA at all times relevant was confined by the Federal Bureau of Prisons (FBOP) at the United States Penitentiary Canaan in Waymart, Pennsylvania (U.S.P. - Canaan).

    7.   The UNITED STATES IS named as defendant in that it is the only proper defendant in suit against the federal government for torts comitted by its employees.

### IV. Exhaustion of Available Remedies

    8.   Plaintiff has filed an administrative tort claim on 5/16/2013 and has received no reply and since two years almost past since the incident, Plaintiff has filed a motion with this

claim requesting that the court hold the claim in abeyance pend-
ing the outcome of the administrative tort claim or denial of
such tort claim.

## V. Factual Statement

9.   On June 25, 2011, Plaintiff ate Chicken Fajitas ser-
ved in the Chow Hall at U.S.P. Canaan.

10.   Beginning the night of June 25, 2011, and becoming
exceedingly more severe the next day, Plaintiff experienced the
following symptoms: fever, diarrhea, vomiting, chills, and se-
vere pain within his bones.

11.   The same night of June 25, 2011, as the Plaintiff was
experiencing the afore-mentioned symptoms, he noticed that other
inmates were experiencing the same symptoms.

12.   As the Plaintiff was experiencing the afore mentioned
symptoms the night of June 25, 2011 and following into the next
day, he noticed other inmates experiencing the same symptoms,
and even others began to faint and fall-out on the recreation
yard, as others were complaining to the unit officers and falling
out inside the unit as well.

13.   The entire U.S.P. Canaan went on lockdown the day of
June 26, 2011, due to the extraordinary number of sick inmates
and staff, some of which needed to be car ed to medical, and
the prison remained on lockdown "upon information and belief"
for approximately two weeks.

14.   On June 28, 2011, staff from the Medical Department
made rounds through the Plaintiff's unit, F-2.

15.   During medical staff's visit to F-2, they took the

- 3 -

Plaintiff's name, while the Plaintiff noticed that many other names were on the list, and then he was told he would be seen and treated during sick call the next day.

16.    During the same medical staff's visit they did pass out a slip of paper that suggested that the Plaintiff sip water and eat light.  It also stated that "[i]f there is no improvement in 24 hours return to sick call.  If symptoms worsen notify Health Service."

17.    The June 28, 2011, visit by Staff from the Medical Department was not a 'sick call' so when there was no improvment in 24 hours, and due to the institution being placed on lockdown, the Petitioner could not "return to sick call".

18.    Petitioner notifed unit staff after 24 hours had elapsed from the June 28, 2011 Medical Department visit that there was no improvement and the Petitioner noticewd that many other inmates were making the sanem notification.

19.    There was no sick call conducted for the Petitioner nor anyone else that he could see or notice for the rest of the lock-down.

20.    Plaintiff suffered the afore-described symptoms for the rest of lockdown, some days more severe then others, and til this very day gets nauseated over the smell of some of the meals containing chicken.

21.    "Upon information and belief" inmates and staff that worked in the kitchen the day of June 25, 2011 will vewrify that the Food Service Administrator failed to verifyt he many steps involved in the proper preparartion and serving of the Chicken Fajitas on June 25, 2011 were taken.

- 4 -

22. "Upon information and belief" inmates and staff that worked in the kitchen the day of June 25, 2011, will verify that the chicken was smelling and rotten, from the time it was pulled out of storage.

23. "Upon information and belief" FBOP Food Service Workers told the Food Service Administrator that the chicken was smelling and rotten, yet he served the chicken anyway.

24. "Upon information and belief" inmates and staff that worked in the kitchen on the day oif June 24, 2011 into June 25, 2011, will verify that the chicken was pulled out for June 25, 2011 meal, way before it is to be removed from the temperature control to when it is cooked and served which is only supposed to allow 4 (four) hours.

25. "Upon information and belief" many staff memebers working at U.S.P. - Canaan on June 25, 2011 who ate the Chicken Fajitas fell just as sick as many of the inmates.

26. "Upon information and belief" the Food Service of U.S.P. Canaan (the Choe Hall/Kitchen) failed multiple inspections during the period of being lockdown and coming back up to a functional order, all of which kept the prison locked-down and inmates from eating in the chow hall.

27. Through the entirety of the incident, Plaintiff was not treated or monitored nor taken to medical for testing as he requested numerous times of medical staff and institutional staff as he suffered from the afore-mentioned symptoms, and through observation the Plaintiff noticed during the lockdown that many other inmates were also not being treated nor monit-

ored, nor being taken to medical.

## CLAIMS FOR RELIEF

A.   Pursuant to the FTCA, Pennsylvania law applies be-
cause the negligent conduct occured in the Commwelath of Penn-
sylvania.  Plaintiff will establish below, the following ele-
ments, covered in the Factual Statement, necessary to prove
the action(s) of negligence:

> I.   The existence of a duty or obligation recog-
> nized by law, requiring the actor to conform
> to a certain standard of conduct;

28.   The Food Service Administrator was responsible to foll-
ow the Food Safety practices and protocols of the FBOP PROGRAM
STATEMENT 4700.05 which dictates duty and obligation in feeding
the Petitioner and the rest of the prison population and the
standard of conduct in which to facilitate that.

29.   The FBOP Officers working as kitchen staff were respon-
sible to follow the Food Safety practices and protocols of the
FBOP PROGRAM STATEMENT 4700.05 which dictates duty and obligation
in feeding the Petitioner and the rest of the prison population
and the standard of conduct in which to facilitate that.

30.   The Medical Staff working at the time of the incident(s)
described above had a duty and obligation to give adequate medi-
cal care and treatment to the Petitioner and the rest of the
prison population in accordance to the FBOP PROGRAM STATEMENT.

31.   The Warden, Assistant Wardens, and other Senior Staff
had a duty and obligation to listen to the complaints and direct
help and assistance to the Petitioner and the rest of the prison

- 6 -

population in accordance to the FBOP PROGRAM STATEMENT.

II. A failure on the part of the defendant
to conform to that duty, or a breach
thereof;

32.   The Food Service Administrator failed and/or breached
his duty to conform to the Food and Safety practices and proto-
cols of the FBOP PROGRAM STATEMENT 4700.05 which dictates duty
and obligation in feeding the Petitioner and the rest of the
prison population.

33.   The FBOP Officers working as kitchen staff failed and -
or breached thier duty to conform to the Food and Safety practices
and protocols of the FBOP PROGRAM STATEMENT  4700.05 which dictates
duty and obligation in feeding the Petitioner and the rest of
the prison population.

34.   The Medical Staff working at the time of the incident(s)
described above failed and/or breached their duty to give ade-
quate medical care and treatment to the Petitioner and the rest
of the prison population, according to FBOP PROGRAAM STATEMENT.

35.   The Warden, Assistant Wardens, and other Senior Staff
failed and/or breached their duty to listen to the complaints
and direct help and assistance to the Petitioner and the rest
of the prison population, according to FBOP PROGRAM STATEMENT.

III. A causal connection between the defend-
ant's breach and the resulting injury;

36.   Failure or breach thereof by the Food Service Admini-
strator to the duty or obligation dictated by the FBOP PROGRAM
STATEMENT 4700.05 concerning the preparation and serving of
chicken is the direct causal connection to the Petitioner get-

ting sick from food poisoning.

37.   Failure or breach thereof by the staff working in the
kitchen to the duty or obligation dictated by the FBOP PROGRAM
STATEMENT 4700.05 concerning the preparation and serving of
chicken is the direct causal connection to the Petitioner get-
ting sick from food poisoning.

38.   Failure or breach of duty by Medical Staff working
at the time of the incident(s) to confrom to the duty or obli-
gation dictated by the FBOP PROGRAM STATEMENT concerning the
providing of adequate medical care and treatment to the Peti-
tioner and the rest of the prison population is the direct caus-
al connection to the Petitioner remaining sick and suffering
from pain for a majority if not totality of the prison lockdown.

39.   Failure or breach of duty by the Warden, Assistant
Wardens, and other Senior Staff to conform to the duty or obli-
gation dictated by the FBOP PROGRAM STATEMENT concerning the
listening to of complaints and directing help and assitance to
the Petitioner and the rest of the prison population is the di-
rect causal connection to the Petitioner remaining sick and suf-
fering from pain for a majority if not totality of the prison
lockdown.

        IV. Actual loss and damage suffered by the
            complainant.

40.   As a result of the Food Service Administrator's ne-
gligent conduct on June 25, 2011, the Petitioner became extreme-
ly ill and violently sick, lasting for the majority if not total-
ity of the prison lockdown and further, the Petitioner now has
problems eating chicken products (majority of the meals).

41.   As a result of the negligent conduct of the Staff work-
ing in the kitchen on June 25, 2011, the Petitioner became extreme-
ly ill and violently sick, lasting for the majority of the prison
lockdown and further, the Petitioner now has problems eating
chicken products (majority of the meals).

42.   As a result of the Medical Staff's negligent conduct
on June 25, 2011 and the rest of the following prison lockdown,
the Petitioner remained extremely ill and violently sick, lasting
the majority if not the totality of the prison lock-down.

43.   As a result of the Warden's, Assistant Warden's, and
Senior Staff's negligent conduct on June 25, 2011, and the rest
of the following prison lockdown, the Petitioner remained extreme-
ly ill and violently sick, lasting the majority if not the totality
of the prison lock-down.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this court grant the
following relief:

Award compensatory damages in the amount of $20,000 (twenty-
thousand dollasrs) for Plaintiffs physical and emotional pain
and suffering (past,present & furture) concerning this complaint.

Pursuant to 28 U.S.C. 1746, I declare (or certify, verify,
or state) under penalty of perjury that the following is true
and correct.

Dated 6 - 4 - 13

_Rcs. Carneglia, Charles_
Charles Carneglia
United States Penitentiary -
Canaan
P.O. Box 300
Waymart, PA  18472

## CERTIFICATE OF SERVICE

I, CHARLES CARNEGLIA, hereby certify that a true and correct copy of the foregoing COMPLAINT PURSUANT TO FTCA was served First Class Mail, Postage Prepaid, addressed to:

> U.S. Dept. Of Justice
> FBOP Northeastern Regional Office
> Regional Counsel
> U.S. Customs House & Chestnut Street
> Philadelphia, PA  19106

Pursuant to the prisoner's mailbox rule established by the United States Supreme Court in **Houston v. Lack**, 487 U.S. 266(1988) by placing said document in the institutional legal mailbox here at the United States Penitentiary Canaan, at Waymart, PA. 18472, this 4th day of June, 2013.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the following is true and correct.

Res.CARNAGLIA, CHARLES
Charles Carneglia
United States Penitentiary -
Canaan
P.O. Box 300
Waymart, PA  18472

Executed on: 6-4-13

CHARLES CARNEGLIA
REG # 08773-016
UNITED STATES PENITENTIARY
CANAAN
PO BOX 300
WAYMART, PA 18472

NO FEE ENCLOSED

RECEIVED
SCRANTON

JUN 1 3 2013

PER _____
DEPUTY CLERK

Clerk
United
Middle
PO Box
Scran

Legal Mail